STELKO ELECTRIC, INC.,
Appellant–Plaintiff,

v.

TAYLOR COMMUNITY SCHOOLS BUILDING CORPORATION, Hagerman Construction Corporation, and Schmidt Associates, Inc., Appellees–Defendants.

No. 34A02–0312–CV–1071.

Court of Appeals of Indiana.

April 29, 2005.

Edward Filer, Kurt Drain, FagelHaber LLC, Chicago, IL, Karl L. Mulvaney, Nana Quay–Smith, Bingham McHale LLP, Indianapolis, IN, Attorneys for Appellant.

Mark A. McCann, Jeremy A. Peelle, McCann/Peelle, Kokomo, IN, Attorneys for Appellee Taylor Community Schools Building Corporation.

Julia Blackwell Gelinas, Steven J. Strawbridge, Lucy R. Dollens, Locke Reynolds LLP, Indianapolis, IN, Attorneys for Appellee Hagerman Construction Corporation.

## OPINION

KIRSCH, Chief Judge.

Stelko Electric, Inc. ("Stelko") appeals the trial court's grant of summary judgment in favor of Taylor Community Schools Building Corporation ("Taylor") and Hagerman Construction Corporation ("Hagerman").[1] On appeal, Stelko raises the following restated issues:

I.  Whether the trial court erred in granting summary judgment to Taylor on the basis that the terms of the contract between Stelko and Taylor barred Stelko's breach of contract claims.

II. Whether it was error for the trial court to grant Hagerman summary judgment on the basis that the "economic loss doctrine" barred Stelko's negligence claim.

We affirm.

---

1. The trial court also granted summary judgment against Stelko in favor of Schmidt Associates, Inc. Stelko is appealing the trial

## FACTS AND PROCEDURAL HISTORY

This controversy arose in connection with Taylor's project to convert an existing high school into a combined high school and middle school ("Project"). The Project required renovation of existing buildings as well as construction of new additions. In 1996, Taylor contracted with Schmidt Associates, Inc. ("Schmidt") to provide architectural services for the design and construction of the Project. Approximately one year later, Taylor entered into a contract with Hagerman to provide construction management services for the Project ("Hagerman/Taylor Contract").

On March 25, 1998, Taylor entered into a contract with Stelko ("Stelko/Taylor Contract"), pursuant to which Stelko agreed to supply all of the Project's electrical work between a commencement date in March 1998 and a substantial completion date in December 1999. *Appellant's Appendix* at 28–29. The General Conditions of the Contract for Construction ("General Conditions")—a form document generated by the American Institute for Architects that sets forth construction conditions—governed conditions on the Project. *Appellant's Appendix* at 348, 386. A second form document, titled Supplementary Conditions, in turn, modified the General Conditions. *Id.* at 365.

Stelko's December 1999 completion date was estimated on the basis that the work would be completed while the school buildings were occupied with staff, faculty, and multiple contractors during most of the Project. Prior to contracting for the work, Stelko knew of the timing of the Project and the conditions under which work would be completed.

court's ruling only as to Taylor and Hagerman.

Stelko began its work in the spring of 1998, but immediately encountered unforeseen obstacles, including: defects in the design drawings; lack of compliance by Taylor and Hagerman with the construction schedule; interference due to student tours through the Project site; interference with Stelko's access to both materials and the Project site; and damage from a June 1998 tornado.[2] Stelko also noted that the Project was further hampered by Taylor's unilateral decision to shorten the completion deadline by four months. As a result of the tornado and the need for storm repair, the Stelko/Taylor Contract was modified. Taylor and Stelko entered into ten separate change orders between April 1998 and June 1999, which resulted in increasing the contract price by more than $250,000.00. *Id.* at 208.

According to the General and Supplementary Conditions of the contract, Stelko was required to advise Taylor if it intended to make a claim for an increase in the contract sum or an extension of time within twenty-one days after the event giving rise to such claim. *Id.* Stelko substantially completed the Project on August 20, 1999, four months early, by hiring additional laborers and incurring unanticipated costs. Nevertheless, it never made either a claim for an extension of time or a claim for an increase in contract sum within the required twenty-one days of incurring the costs. Instead, Stelko waited until four months after the construction had been completed to claim Taylor owed it cost overruns of more than one million dollars. Taylor refused to pay the additional costs on the grounds that Stelko should have sought an extension of time, and could not now be reimbursed for a unilateral increase in manpower.

On February 1, 2000, Stelko filed suit against Taylor seeking damages for breach of contract, breach of implied warranty of suitability of plans and specifications, breach of implied covenant of good faith and fair dealing, and quantum meruit. The complaint also alleged negligence on the part of Hagerman.[3]

In May 2003, Taylor and Hagerman filed a joint motion for summary judgment and argued that they were entitled to judgment as a matter of law because: (1) Stelko's claim for money damages was barred by Section 8.3.4, the "no damages for delay" clause, which provided that the only remedy available to a contractor is an extension of time; and (2) the negligence claim against Hagerman was barred both by the "economic loss doctrine" and because Stelko lacked contractual privity with Hagerman and was not an intended third-party beneficiary of the Hagerman/Taylor Contract. Stelko filed its response to the joint motion for summary judgment, along with its designation of evidence, arguing that Section 8.3.4 did not bar its claims because its monetary damages arose from acceleration of the contract and not from delay. Stelko, likewise, argued that the negligence claim was not barred. In their reply, Taylor and Hagerman reiterated their original arguments and elaborated on the argument that the tornado, instead of interfering with the

---

2. Taylor characterizes the tornado as an "unanticipated benefit to the [P]roject," *Taylor's Brief* at 3, because it kept staff and students away from the project during the tornado repair. This absence removed restrictions and allowed Stelko and other contractors to have, for a period of time, unfettered access and unlimited construction/renovation ability.

3. The complaint was amended on February 8, 2001 to add a negligence claim against Schmidt. Schmidt joined Hagerman and Taylor in successfully filing a joint motion for summary judgment. As previously noted, Schmidt is not a party to this appeal.

Project, allowed it to be completed four months ahead of schedule.

The trial court held a hearing and granted Taylor and Hagerman's joint motion for summary judgment noting:

> [W]ith regard to Counts V and VI [the negligence claims against Hagerman and Schmidt], the Motion for Summary Judgment is granted. Judgment is entered on behalf of the Defendants Hagerman and Schmidt. The only question of fact that has been put forth by the Plaintiff on this issue is what the duties were under the contract and what the intent was. I think these only become material in the event that a suit for negligence is allowed. All of the law that I've seen indicates that the facts in this case bar such a suit. I conclude that there was no privity. There was no third party beneficiary, and there was no actual knowledge of the exception that—pointed [sic] out by Plaintiff. And I have to agree with the Defendants that the questions I've asked are very material. There is nothing in Plaintiff's Brief or argument that propounds any facts that would be material in construing the—the defectiveness or—that's not a good word, the character of the exculpatory clause which is the key issue, and when queried, nobody can come up with those facts here today even. So in addition, the Defendant's Motion for Summary Judgment with regard to Counts I through IV is granted. Court finds there is no factual—no dispute as to any material fact with regard to those claims. That's all.

*Transcript* at 37. Stelko now appeals the summary judgment with respect to Taylor and Hagerman.

## DISCUSSION AND DECISION

The party appealing from a summary judgment decision bears the burden of persuading this court that the ruling was erroneous. *Splittorff v. Fehn*, 810 N.E.2d 385, 387 (Ind.Ct.App.2004), *trans. denied* (2005) (citing *Owens Corning Fiberglass Corp. v. Cobb*, 754 N.E.2d 905, 908 (Ind. 2001)). When reviewing the grant or denial of a motion for summary judgment, we use the same standard as the trial court. *Forty–One Associates, LLC v. Bluefield Associates, L.P.*, 809 N.E.2d 422, 426 (Ind. Ct.App.2004); *Bastin v. First Indiana Bank*, 694 N.E.2d 740, 743 (Ind.Ct.App. 1998), *trans. denied*. Summary judgment is appropriate only if the designated evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Forty–One Associates*, 809 N.E.2d at 426; *Hemingway v. Sandoe*, 676 N.E.2d 368, 369 (Ind.Ct.App.1997). The moving party must designate sufficient evidence to eliminate any genuine factual issues, and, once the moving party has done so, the burden shifts to the nonmoving party to come forth with contrary evidence. *Mid–States General & Mechanical Contracting Corp. v. Town of Goodland*, 811 N.E.2d 425, 430 (Ind.Ct.App.2004). We accept as true those facts alleged by the nonmoving party, construe the evidence in favor of the nonmoving party, and resolve all doubts against the moving party. *Id.* Nevertheless, we will affirm summary judgment if it is sustainable on any theory or basis found in the evidentiary matter designated to the trial court. *Forty–One Associates*, 809 N.E.2d at 427; *Inlow v. Inlow*, 797 N.E.2d 810, 818 (Ind.Ct.App.2003), *trans. denied* (2004).

### I. Contract Claims Against Taylor

█ Construction of written contracts is generally a question of law for which summary judgment is particularly appropriate. *Forty–One Associates*, 809 N.E.2d at 427; *Noble Roman's, Inc. v. Ward*, 760 N.E.2d 1132, 1137 (Ind.Ct.App.2002).

When the terms of a contract are clear and unambiguous, those terms are conclusive, and the court will not construe the contract or look at extrinsic evidence, but rather will simply apply the contract provisions. *Forty–One Associates,* 809 N.E.2d at 427; *Stout v. Kokomo Manor Apartments,* 677 N.E.2d 1060, 1064 (Ind.Ct.App. 1997). When interpreting a contract, a court must ascertain and effectuate the intent of the parties. *Forty–One Associates,* 809 N.E.2d at 427; *Samar, Inc. v. Hofferth,* 726 N.E.2d 1286, 1290 (Ind.Ct. App.2000), *trans. denied.* The contract must be read as a whole and the language construed so as not to render any words, phrases, or terms ineffective or meaningless. *Forty–One Associates,* 809 N.E.2d at 427; *Samar, Inc.,* 726 N.E.2d at 1290.

Stelko contends that summary judgment was inappropriate because its contract claims are not barred by Section 8.3.4 of the Stelko/Taylor Contract. Specifically, Stelko asserts that: (1) Taylor breached the contract by failing to schedule, coordinate, and manage the Project; (2) Taylor breached the implied warranty of suitability of plans by failing to provide complete, accurate, and suitable plans and specifications for the construction of the Project; (3) Taylor breached the implied covenant of good faith and fair dealing by hindering, delaying, and interfering with Stelko's work; and (4) Taylor benefited in quantum meruit from Stelko's delivery of equipment, material, and labor to the Project at Taylor's request.

The Stelko/Taylor Contract was a "stipulated sum" contract, pursuant to which Stelko agreed to complete the electrical work on the Project for $1,571,167.00. "A stipulated sum contract establishes a fixed price for the work the contractor is to perform. This is the price the owner/developer will pay regardless of the contractor's actual cost of construction.... Use of a stipulated sum contract places all of the financial risk of construction on the contractor." L. Chris Haug, *Your Development Project May Be Costing You More Than It Should,* The Business Monthly, *www.bizmonthly. com/9—2002/26. html.*

Under the terms of the Stelko/Taylor Contract, Stelko agreed to work with and around other contractors and complete its work in phases—building the new buildings first, and then renovating existing buildings. This made the time schedule tight, and meant that the success of the Project would require a coordinated effort. Stelko understood these constraints before entering into the contract. In pertinent part, the Stelko/Taylor Contract provided:

4.7   Claims and Disputes

4.7.1   Definitions. A Claim is a demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Contract terms, payment of money, extension of time, or other relief with respect to the terms of the Contract. The term "Claim" also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract. Claims must be made by written notice. The responsibility to substantiate Claims shall rest with the party making the Claim.

. . . .

4.7.3   Time Limits on Claims. Claims by either party must be made within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later. Claims must be made by written notice. An additional Claim made after the initial Claim has been implemented by

Change Order will not be considered unless submitted in a timely fashion.

. . . .

4.7.7 Claims for Additional Cost. If the Contractor wishes to make Claim for an increase in the Contract Sum, *written notice as provided herein shall be given before proceeding to execute the Work.* Prior notice is not required for Claims relating to an emergency endangering life or property arising under Paragraph 10.3. If the Contractor believes additional cost is involved for reasons including but not limited to (1) a written interpretation from the Architect, (2) an order by the Owner to stop the Work where the Contractor was not at fault, (3) a written order for a minor change in the Work issued by the Architect, (4) failure of payment by the Owner, (5) termination of the Contract by the Owner, (6) Owner's suspension or (7) other reasonable grounds, Claim shall be filed in accordance with procedure established herein.

4.7.8. Claims for Additional Time.

4.7.8.1.1 If the Contractor wishes to make Claim for an increase in the Contract Time, written notice as provided herein shall be given. The Contractor's Claim shall include an estimate of cost and of probable effect of delay on progress of the Work. In the case of a continuing delay, a revised and updated claim shall be submitted weekly for the duration of the delay.

4.7.8.1.2 If adverse weather conditions are the basis for a Claim for additional time, such Claim shall be documented by data substantiating that weather conditions were abnormal for the period of time and could not have been reasonably anticipated and that weather conditions had an adverse effect on the scheduled construction.

. . . .

8.3 Delays and Extensions of Time

. . .

8.3.4 The Contractor agrees that whether or not any delay shall be the basis for an extension of time, he shall have no claim against the Owner, Architect or Construction Manager for an increase in the contract price, nor a claim against the Owner, Architect or Construction Manager for a payment of allowance of any kind for damage, loss or expense resulting from delays; nor shall the Contractor have any claim for damage, loss or expense resulting from interruptions to or suspension of, his work to enable other Contractors to perform their work. The only remedy available to the Contractor shall be an extension of time.

*Appellant's Appendix* at 352, 360–61, 369 (emphasis added).

Stelko contends that the plain language of Section 8.3.4 deals with claims "resulting from delays" and does not preclude claims, like the ones Stelko incurred, that arise from the acceleration or compression of the time to complete the Project. *Appellant's Brief* at 22. Next, Stelko argues that Section 8.3.4 is specifically limited to claims arising when a Contractor's work is interrupted or suspended in order to let other contractors do their work. Stelko asserts that because its loss arose outside these parameters, this section does not bar Stelko's recovery.

Here, Taylor's designated evidence contained the terms of the Stelko/Taylor Con-

tract. The plain language of the contract provided for a stipulated sum; Taylor agreed to pay Stelko $1,571,167.00 to complete the electrical work "no later than December 1999." *Appellant's Appendix* at 29. However, the tornado caused the parties to enter into ten change orders, which increased the contract sum by $253,700.14. *Id.* at 691–92. The contract stated that, except in the case of an emergency endangering life or property, Stelko must file any claim for an increase in the contract sum in writing prior to proceeding to execute the work. *Id.* at 50, Section 4.7.7. The Stelko/Taylor Contract also required Stelko to file a written claim for any extension of time to complete the contract. Further, the terms of the contract mandated that claims by either party "must be made within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later." *Id.* at 49.

Stelko's amended complaint urged the trial court to find "that Taylor breached its contract with Stelko by refusing to grant adequate time extensions for Stelko to complete its work" and that "Taylor's refusal to grant adequate time extensions and its acceleration of Stelko's work damaged Stelko." *Id.* at 133–34. Taylor replied, citing Section 8.3.4: "The Contractor agrees that whether or not any delay shall be the basis for an extension of time, he shall have no claim against the Owner ... for an increase in the contract price ... The only remedy available to the Contrac-

tor shall be an extension of time." *Id.* at 81.

Taylor designated sufficient evidence that Stelko's duties under the Stelko/Taylor Contract had to be completed by December 1999 and that payment was a stipulated sum. Section 9.1 of the Stelko/Taylor Contract provided: "The Contract Sum is stated in the Agreement and, including authorized adjustments, is the total amount payable by the Owner to the Contractor for performance of the Work under the Contract Documents." *Id.* at 364. Under the terms of the contract, Stelko's requested modifications required written notice.

In January 1999, Stelko filed with Hagerman a "claim summary" setting forth a need for increased contract sum due to the tornado and the compressed time frame.[4] In a letter dated March 17, 1999, Hagerman responded that the costs from the tornado had been separately addressed and compensated by the change orders and that the scheduling of the Project was decreased by more than three months because the tornado had made the work cite of the Project more accessible.[5] *Id.* at 723. Hagerman recommended that Stelko's claims not be accepted as presented, but asked Stelko to revisit the claim and "respond back by the end of March." *Id.* We find no evidence in the designated materials that Stelko responded to Hagerman's March 17, 1999 letter. Hagerman's designated evidence was sufficient to show that Stelko was not owed additional sums under the contract.

4. Stelko filed its claim with Hagerman presumably because its contract with Taylor required Hagerman to "review requests for changes, assist in negotiating Contractor's proposals, submit recommendations to the Architect and Owner, and if they are accepted, prepare change orders and Construction Change Directives which incorporate the Ar-

chitect's modifications to the documents." *Appellant's Appendix* at 331.

5. Hagerman further noted its surprise that "conditions caused labor costs to double, especially when the base contract scope of work did not change." *Appellant's Appendix* at 724.

■ The burden then shifted to Stelko to prove the existence of a genuine issue of material fact. However, Stelko has provided no evidence that it was obligated to complete the contract four months early. Stelko asserted that Taylor made a unilateral change to the Stelko/Taylor Contract, which required Stelko to complete its electrical work four months early. A party to a contract may not make unilateral changes to a contract. While parties may voluntarily enter into and modify contracts, such modifications, which are also contracts, require all the elements of a contract. *Henthorne v. Legacy Healthcare, Inc.*, 764 N.E.2d 751, 759 (Ind. Ct.App.2002). Here, there is no evidence of an offer by Taylor, an acceptance by Stelko, or consideration to cause a change in the completion date. In short, there is no evidence of a bargained for exchange that the Project be completed early. As such, Stelko's decision to comply with Taylor's request for early completion is not part of the contract.

Even if Stelko was bound by the compressed completion date, it designated no evidence that it filed a claim requesting an extension of time to complete the Project. Stelko has designated no evidence creating a genuine issue of material fact that Taylor is obligated to pay twice the amount it contracted for to have the Project completed, regardless of the date of completion. Likewise, there is no evidence that, under a theory of quantum meruit, Taylor received more than it bargained for in the contract. The majority of the additional

expense itemized by Stelko was for the additional manpower. Stelko has not persuaded us that the trial court's ruling was improper.

## II. Negligence Claim Against Hagerman

■ Stelko argues that the trial court erred in granting summary judgment in favor of Hagerman on the basis that Stelko's negligence suit was barred by the "economic loss doctrine." Stelko contends that "when a plaintiff seeks to recover, in tort, from another party for economic damages, that plaintiff must be able to **either** demonstrate contractual privity with the defendant **or** that the defendant had actual knowledge that what he was contractually providing would be relied on by the plaintiff." *Appellant's Brief* at 47 (emphasis in original) (citing *Essex v. Ryan*, 446 N.E.2d 368 (Ind.Ct.App.1983)). While apparently conceding that there was no privity between Stelko and Hagerman,[6] Stelko contends that Hagerman had actual knowledge that Stelko was relying on Hagerman's actions.

The scope of tort liability arising out of contractual services has traditionally been framed in terms of concepts borrowed from the law of contracts. *Essex*, 446 N.E.2d at 371. Thus, the tortfeasor's duty has generally been limited to only those parties in privity with him. *Id.* While a professional generally owes no duty to third persons, our court has nevertheless held a duty when the professional had actual knowledge that those persons would rely on his rendering of professional ser-

---

6. The Stelko/Taylor Contract made clear that there was no privity between Stelko and Hagerman. Section 1.1.2 of the contract provided in pertinent part:

The Contract represents the entire integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. The Contract may be amended or modified only by a Modification. The Contract Documents shall not be construed to create a contractual relationship of any kind (1) between the Architect and Contractor, (2) between the Construction Manager and Contractor, ... or (5) between any person or entities other than the Owner and Contractor.

vices. *Webb v. Jarvis,* 575 N.E.2d 992, 996 (Ind.1991). "In such cases, we have recognized that a duty may be owed to a beneficiary of the consensual relationship, akin to that of a third party beneficiary of a contract, where the professional has actual knowledge that the services being provided are, in part, for the benefit of such third persons." *Id.* Contrary to Stelko's assertion, no such relationship exists here.

Hagerman designated evidence containing the Stelko/Taylor Contract. Section 4.6.6 of the contract provided:

> The Construction Manager, except to the extent [it can schedule and coordinate], and Architect will not have control over or charge of and will not be responsible for construction means, methods, techniques, sequences or procedure, or for safety precautions and programs in connection with the Work, since these are solely the Contractor's responsibility . . . and neither [the Construction Manager or Architect] will be responsible for the Contractor's failure to carry out the Work in accordance with the Contract Documents. Neither the Construction Manager nor the Architect will have control over or charge of or be responsible for acts or omissions of the Contractor, Subcontractors, or their agents or employees, or of any other person performing portions of the Work.

*Appellant's Appendix* at 358. Taylor required Hagerman to develop a master schedule, inclusive of access requirements and sequencing of construction, and Stelko was aware of Hagerman's duty. *Id.* at 338, 358. While Stelko alleged that it had to follow Hagerman's schedules, from the terms of the Stelko/Taylor Contract, Stelko should have known that Hagerman's services were not provided to benefit Stelko, but, instead, were intended to keep the Project organized for Taylor. Stelko has designated no evidence showing that Hagerman was in privity with Stelko or that Hagerman had, or should have had, actual knowledge that Stelko was relying on Hagerman's actions. Because the relationship necessary to impose a duty on Hagerman extending to Stelko is absent, we find summary judgment in favor of Hagerman was appropriate.

Affirmed.

BAKER, J., and ROBB, J., concur.