**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEYS FOR APPELLANTS:

**ZACHARY J. EICHEL**
**MICHAEL L. EINTERZ**
**MICHAEL L. EINTERZ, JR.**
Einterz & Einterz
Zionsville, Indiana

ATTORNEYS FOR APPELLEE:

**DAVID B. VORNEHM**
**SEAN T. DEVENNEY**
**WILLIAM E. KELLEY, JR.**
Drewry Simmons Vornehm, LLP
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| HOWELL CONTRACTORS, INC., and FIDELITY AND DEPOSIT COMPANY OF MARYLAND, | ) ) ) ) |
| Appellants-Defendants, | ) ) |
| vs. | ) No. 49A05-1305-PL-232 ) |
| CALUMET CIVIL CONTRACTORS, INC., | ) ) |
| Appellee-Plaintiff. | ) |

## APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Thomas J. Carroll, Judge
Cause No. 49D06-1001-PL-891

**October 4, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Howell Contractors, Inc. ("Howell") and Fidelity and Deposit Company of Maryland ("Fidelity"), (collectively, "Howell"), appeal the grant of partial summary judgment to Calumet Civil Contractors, Inc. ("Calumet") on Calumet's breach of contract, unjust enrichment, and surety claims and also appeal a final summary judgment order entered in response to Howell's motion to reconsider and motion for clarification. We affirm the grant of partial summary judgment as to liability, reverse the entry of summary judgment on damages, and remand for further proceedings.

**Issues**

Howell presents two issues for review:

I.      Whether partial summary judgment on liability was improvidently granted; and

II.     Whether summary judgment on damages was improvidently granted.

**Facts and Procedural History**

In late 2007, Howell had submitted a bid to act as the general contractor for the City of Indianapolis ("the City") on a project known as the 10th and Mitthoefer Septic Tank Elimination Program ("the Project"), and in turn requested bids for subcontracted paving work. Calumet's proposal for the paving work, dated November 21, 2007 ("the Proposal"), listed the "scope of work" as follows:

| 5 | HMA for Driveway Repair | 35.0 Ton | $ | 180.00 | $ | 6,300.00 |
|---|---|---|---|---|---|---|
| 6 | HMA 9.5mm Surface | 1,700.0 Ton | $ | 60.00 | | $102,000.00 |
| 7 | HMA 19mm Intermediate | 7,800.0 Ton | $ | 50.00 | | $390,000.00 |
| 8 | HMA 25mm Base | 130.0 Ton | $ | 78.00 | $ | 10,140.00 |

2

52 Mobilization/Demobilization  1.0 LSUM      $15,700.00    $ 15,700.00
56 Temporary CMA 25mm       3,500.0 Ton     $    89.00    See Below

  TOTAL                                                                        $524,140.00

(App. 23.)   The Proposal also included price escalation clauses in the "Clarifications" section, as follows:

> Q.  All work performed after November 30, 2008 will be subject to additional escalation.
>
> R.  This price shall be valid for ten (10) days from the bid date.  After this time, all prices are subject to adjustment due to the volatile nature of liquid asphalt pricing related to the cost of oil.

(App. 24.)

On December 31, 2007, Howell entered into an agreement with the City to act as the general contractor for the Project.  Howell furnished, through Fidelity, a payment bond on the Project equal to the amount of the contract.

On March 13, 2008, Howell and Calumet entered into a contract for the paving work, whereby Calumet agreed "to perform the work identified in the Technical Specifications Section 400 in accordance with the Project's Contract Documents" ("the Subcontract.") (App. 25.)  The Proposal was specifically incorporated into the Subcontract.[1]  Howell's contract with the City did not contain parallel escalation clauses.

Over the course of the performance of the Subcontract, certain events occurred relative to the sums due from Howell to Calumet.  On November 7, 2008, Matt Young of Howell sent an e-mail to Calumet's project manager:

---

[1] Article 9 provided in part:  "Pricing is as noted on the attached proposal which is made part of this contract."  (App. 27.)

3

> I am writing in response to your voice mail about additional work. What I understand is that Clark Dietz will be paying for a portion of 10th Street that we disturbed. Apparently there is a small portion outside the work limits that they are not paying for and there [are] some inside the limits they are paying for. We will pay you the agreed quantity for work that is outside the limits paid by Clark Dietz. Currently this spot and a small spot on Malvina are the only spots I know of that are outside of the planned project scope. Please continue to have your field guys and our field guys agree to these quantities each day.

(App. 81.) A third party paid for a portion of the cost to repair the damaged area, and Calumet claimed entitlement to $1,021.05 from Howell. Howell did not pay Calumet the claimed amount. Also, during 2008, the price of asphalt increased significantly. Calumet notified Howell and Howell submitted a request to the City for the price escalation. When the City refused to pay Howell the escalated price, Howell refused to pay Calumet.

Finally, the scope of the work was changed with respect to Item 7. On June 16, 2008, the City issued Work Directive Change 8 providing that the depth of the asphalt would be changed from 6 inches to 3 inches. The same area was to be covered, but with less material. Calumet claimed that its bid had been calculated with labor costs divided by tons as opposed to area, and that, with the labor and mobilization requirements constant, but the quantity decreased, a higher unit cost was appropriate. The City issued Change Order 4 to Howell, providing Howell with a price adjustment so that Howell was paid $61.00 per ton. When Calumet sought compensation from Howell, Howell "forwarded" a request to the City, without noting the existence of Change Order 4. (App. 360.) A representative of the City responded that the City could not accept a claim from a subcontractor and rejected the request. Howell did not execute a Change Order for Calumet's benefit and did not pay

4

Calumet above the $50.00 per ton for Item 7 originally contemplated.[2]

On January 8, 2010, Calumet filed a Complaint against Howell and Fidelity, claiming that Howell had wrongly refused to pay $1,021.05 for work performed on April 2, 2009, $44,965.12 for the increase in the price of liquid asphalt, and $79,458.00 due to a significant change in the scope of work (Item 7). Calumet alleged that Howell's failure to pay constituted a default under the Fidelity payment bond.

On December 2, 2010, Calumet filed a motion for partial summary judgment. On February 11, 2011, Howell filed its response and a cross-motion for summary judgment. On June 29, 2011, the trial court conducted a hearing on the respective motions and denied both. The matter was set for a bench trial.

On September 11, 2012, at a pre-trial conference in chambers, the parties advised the trial court of an agreement as to the conduct of proceedings. An Agreed Entry was submitted on September 25, 2012, whereby the parties agreed that the trial date should be vacated and the trial court should re-examine motions for partial summary judgment as to liability only. The parties were afforded the opportunity to submit supplemental briefs. On September 21, 2012, the trial court approved the Agreed Entry.

On March 22, 2013, the trial court issued its "Entry on Summary Judgment" providing that Calumet's "Motion for Partial Summary Judgment on contractual liability is hereby granted." (App. 10.) Howell filed a motion to reconsider and motion for clarification. The

---

[2] Kenneth Stewart, Jr., Howell's project manager, testified in deposition that Howell intended – at the time it submitted bids to the City – to self-perform the work of Items 7 and 8. It was later subcontracted to Calumet. Paul Bricking Jr. of Howell testified in his deposition that Howell received $61.00 per ton and Calumet was paid $50.00 and he did not know what the difference was attributable to.

5

motion to reconsider assumed that Calumet had prevailed on each of its claims. Howell asked that the extra work claim be reconsidered due to the lack of a change order, that the change in scope of work claim be reconsidered for failure to obtain a price alteration from the City, and that the liquid asphalt price adjustment claim be reconsidered based upon Howell's construction of Provision R of the Subcontract Proposal.[3]

In the motion for clarification, Howell asserted that the trial court did not specify the claim or claims for which Howell was liable or provide "the supporting basis for the contractual liability." (App. 394.) The following language was included: "Specifically, Howell asserts that without establishing the amount for which an alleged claim exists, that a determination of liability cannot be granted." (App. 394.) On April 26, 2013, the trial court responded by amending the summary judgment entry and entering judgment for Calumet in the full amount of its claims: $1,021.05 for extra work, $44,965.12 for increases in the cost of liquid asphalt, and $79,458.00 for a significant change in the scope of work. Howell and Fidelity were to be jointly and severally liable for the aggregate judgment of $125,444.17. Howell appeals.

**Discussion and Decision**

Standard of Review

Summary judgment is appropriate only if the pleadings and designated materials considered by the trial court show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Yates v. Johnson Cnty. Bd.

---

[3] Provision Q was not discussed.

6

of Comm'rs., 888 N.E.2d 842, 846 (Ind. Ct. App. 2008). Our well-settled standard of review is the same as it was for the trial court. Landmark Health Care Assocs., L.P. v. Bradbury, 671 N.E.2d 113, 116 (Ind. 1996).

We must construe all evidence in favor of the party opposing summary judgment, and all doubts as to the existence of a material issue must be resolved against the moving party. Yates, 888 N.E.2d at 847. However, once the movant has carried its initial burden of going forward under Trial Rule 56(C), the nonmovant must come forward with sufficient evidence demonstrating the existence of genuine factual issues, which should be resolved at trial. Otto v. Park Garden Assocs., 612 N.E.2d 135, 138 (Ind. Ct. App. 1993), trans. denied. If the nonmovant fails to meet his burden, and the law is with the movant, summary judgment should be granted. Id.

A genuine issue of material fact exists where facts concerning an issue that would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue. Huntington v. Riggs, 862 N.E.2d 1263, 1266 (Ind. Ct. App. 2007), trans. denied. Questions of law are reviewed de novo and we owe no deference to the trial court's legal conclusions. In re Guardianship of Philips, 926 N.E.2d 1103, 1106 (Ind. Ct. App. 2010).

We may affirm the grant of summary judgment on any basis argued by the parties and supported by the record. Payton v. Hadley, 819 N.E.2d 432, 437 (Ind. Ct. App. 2004). However, neither the trial court nor the reviewing court may look beyond the evidence specifically designated to the trial court. Best Homes, Inc. v. Rainwater, 714 N.E.2d 702,

705 (Ind. Ct. App. 1999). Trial Rule 56(H) specifically prohibits this Court from reversing a grant of summary judgment on the ground that there is a genuine issue of material fact, unless the material fact and the evidence relevant thereto shall have been specifically designated to the trial court. AutoXchange.com, Inc. v. Dreyer & Reinbold, Inc., 816 N.E.2d 40, 45 (Ind. Ct. App. 2004).

Our standard of review is not altered by the fact that the parties made cross-motions for summary judgment. Ind. Farmers Mut. Ins. Grp. v. Blaskie, 727 N.E.2d 13, 15 (Ind. Ct. App. 2000). Instead, we consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. Id.

Construction of written contracts is generally a question of law for which summary judgment is particularly appropriate. Stelko Elec. v. Taylor Comm. Schls, 826 N.E.2d 152, 155 (Ind. Ct. App. 2005). When terms of a contract are clear and unambiguous, the terms are conclusive, and the court will not construe the contract or look at extrinsic evidence, but will simply apply the contract provisions. Id. at 156.

<u>Partial Summary Judgment on Liability</u>

At the outset, we observe that Howell has found the partial summary judgment order on liability to be confusing. According to Howell, it has not been able to determine the specific claims upon which Calumet prevailed.

The partial summary judgment order provided: "the Court … now grants the Plaintiff Calumet Civil Contractors' Motion for Partial Summary Judgment and denies Defendants' Howell Contractors, Inc. and Fidelity and Deposit Company of Maryland's Cross-Motion for

8

Partial Summary Judgment." (App. 9.) Calumet moved for summary judgment upon each of its claims. The trial court stated that the motion was granted and made no reference to a part or portion thereof. The trial court did not limit its grant of partial summary judgment to a particular claim or claims, and so necessarily found Howell liable on each of Calumet's claims presented in the Complaint.[4]

Indeed, Howell has presented appellate arguments on the various claims. Howell, the party appealing the grant of summary judgment, bears the burden of persuading us that the trial court's ruling was improper. Ind. Reg'l Recycling, Inc. v. Belmont Indus., Inc., 957 N.E.2d 1279, 1282 (Ind. Ct. App. 2011), trans. denied. If the entry of summary judgment can be sustained on any theory supported by the record, we will affirm. Hochstetler, 947 N.E.2d at 930.

Extra Repair Work Outside Contract. Calumet alleged that it had performed "extra work" on April 2, 2009 for which it had not received payment from Howell. (App. 13.) According to Calumet, Howell had expressly requested the work and had retained the benefit thereof. To prevail on a theory of quantum meruit – also referred to as unjust enrichment – Calumet must have established that its services conferred a measurable benefit upon Howell under such circumstances that Howell's retention of the benefit would be unjust. See Bayh v. Sonnenburg, 573 N.E.2d 398, 408 (Ind. 1991). The benefit must be one that the defendant impliedly or expressly requested. Coleman v. Coleman, 949 N.E.2d 860, 867 (Ind. Ct. App.

---

[4] A trial court is not required to enter findings and conclusions in support of an entry of summary judgment and where such findings are made, they aid in review by providing reasons for the trial court's decision but are not binding on the appellate court. Hochstetler Living Trust v. Friends of Pumpkinvine Nature Trail, Inc., 947 N.E.2d 928, 930 (Ind. Ct. App. 2011).

9

2011).

The designated materials reveal that Howell accidently tore up some pavement and arranged for Calumet to perform repair work outside the contract parameters. Howell anticipated that a third party would be the primary obligor but promised supplemental payment. Calumet performed the repair work in full. Howell does not deny that the work outside the contract to repair damaged property was satisfactorily performed and that it received the benefits. Howell simply claims that Calumet did not comply with a written claim process to the City. Nonetheless, Howell's explicit request and offer of payment for repair work did not include this contingency. The trial court properly concluded that Howell's retention of the benefit of Calumet's work, without payment to Calumet, would be unjust.

Price of Liquid Asphalt. The parties agree that the cost of liquid asphalt escalated significantly before the Subcontract work was fully performed. The trial court found that Howell has contractual liability in this regard.

In summary judgment proceedings, Howell strenuously maintained the position that it should not have to pay for a price increase that the City did not specifically accept. On appeal, Howell contends that the trial court allowed Calumet to unilaterally "change the contract price." (Appellant's Br. at 20.) In Howell's view, Calumet was given unfettered discretion to change a price without notice or reasonableness.

The Subcontract provision on pricing is as follows: "Pricing is as noted on the attached proposal which is made part of this contract." (App. 27.) The Proposal included

Provision Q: "All work performed after November 30, 2008 will be subject to additional escalation." The Proposal also included Provision R: "This price shall be valid for ten (10) days from the bid date. After this time, all prices are subject to adjustment due to the volatile nature of liquid asphalt pricing related to the cost of oil." (App. 27.)

Howell has suggested in summary judgment briefs that Provision R could be read such that the opportunity for claiming price increases is extinguished upon signing of the Subcontract. The plain language of the provision fails to support this construction. Moreover, Howell has offered no construction of Provision Q other than its operation as an escalation clause. An unambiguous contract must be enforced as written. Kiltz v. Kiltz, 708 N.E.2d 600, 602 (Ind. Ct. App. 1999), trans. denied.

Calumet did not unilaterally modify a contract. Its contract with Howell explicitly provides for price adjustment due to the volatile nature of liquid asphalt. Other designated materials indicate that at least one other paving subcontractor who submitted a bid to Howell included an escalation clause because of liquid asphalt price volatility; deposition testimony suggests this is a common practice among paving contractors. Howell has essentially sought to link its payment for price escalation to the City's willingness to accept additional costs. Although Howell has postulated that it has no obligation to pay if the City doesn't pay, the Subcontract says otherwise. The trial court properly concluded that Howell has liability to Calumet in this regard.

Significant Change in Scope of Work. Finally, Howell challenges the trial court's determination that it is liable to Calumet after the scope of Calumet's work was significantly

11

changed – consistent with the relevant contractual definition – and Calumet fully performed according to the City's and Howell's specifications. Parties may voluntarily enter into and modify contracts; however, the modifications are also contracts and require all the elements of a contract, that is, an offer, acceptance, and consideration. Stelko, 826 N.E.2d at 159.

Calumet averred that it had "performed all of its contractual obligations under the Subcontract, including changed and extra work, in a reasonable and timely manner." (App. 13.) Howell has designated no materials that would indicate otherwise. Therefore, we accept as true that Calumet fully performed its contractual obligations. See Cowe by Cowe v. Forum Grp., Inc., 575 N.E.2d 630, 633 (Ind. 1991) ("In ruling upon a motion for summary judgment, facts alleged in a complaint must be taken as true except to the extent that they are negated by depositions, answers to interrogatories, affidavits, and admissions on trial or by testimony presented at the hearing on a motion for summary judgment.")

Furthermore, Howell has admitted that Change Order 8 constituted a significant change to the scope of Calumet's work.[5] Howell has not disputed that Calumet's calculation of unit cost in the Proposal was premised upon labor costs being distributed over a much larger quantity of materials. Despite the significant change with regard to Item 7, Howell has argued that it has no obligation to pay Calumet a changed amount because Calumet did not comply with the change order process so as to procure additional payment from the City.

The designated materials reveal that the City issued a work change directive such that

---

[5] Section 9.1.2 of the City/Howell contract provides in relevant part: "The term 'significantly changed' shall be construed to apply only to the following circumstance: When a major pay item of Work is increased in excess of 125% or decreased below 75% of the original contract quantity." (App. 88.) Here, there was a reduction to 50% of the original quantity of a major item of work.

12

the area encompassed by Item 7 would be paved to one-half the depth originally anticipated. This would require less material, at first blush indicating a savings as opposed to increased cost. However, deposition testimony established that the bidding of Item 7 was made on a "per ton" basis, with the total labor costs spread over a large quantity of tonnage. Other testimony revealed that labor/mobilization costs would not be halved when the materials were (at least theoretically) halved and would properly need to be spread over a much lesser tonnage.

Indeed, Howell received a change order and was given payment of $61.00 per unit. However, Howell never issued a change order for Calumet's benefit. Via e-mail, Howell advised the City that it was passing along a claim from Calumet. The City responded that it did not entertain claims from subcontractors. Howell received the City's directive, demanded and obtained full compliance from Calumet, and was itself compensated by the City in light of the changes. However, Howell did not fulfill its obligation to issue a change order for Calumet's benefit to allow Calumet to share in the increased compensation. Calumet was not in a contractual position to deal directly with the City. The trial court did not err in finding Howell liable based upon a significant change in the scope of Calumet's work, which Calumet fully performed at Howell's instance.

Payment under the Bond. The trial court ordered that Fidelity be jointly and severally liable with Howell. The designated materials include Howell's contract with Fidelity. It is undisputed that, pursuant to the bond agreement, Fidelity agreed to act as surety for sums for which Howell is liable to pay related to the Project. The trial court properly found Fidelity

13

liable for Calumet's judgment against Howell.

<u>Order on Damages</u>

The trial court issued a final order on damages in response to Howell's "suggestion" that liability could not be determined without establishing the amount of damages. (App. 7.) Howell's motion for clarification and motion for reconsideration might have been more artfully drafted to avoid such a suggestion. Nonetheless, Howell did not explicitly request that summary judgment be entered on damages.

The parties had explicitly agreed, in paragraph 5 of the Agreed Entry, that the issue of Calumet's damages would be reserved and addressed as needed after the ruling on liability. The trial court approved the agreement and neither party subsequently asked that it be set aside. Moreover, summary judgment is a "lethal weapon" and a trial court may not, by a sua sponte order, deprive a non-movant of time to respond with argument and designation of materials pursuant to Trial Rule 56. <u>Crossno v. State</u>, 726 N.E.2d 375, 381 (Ind. Ct. App. 2000).

Finally, we observe that there are factual disputes as to the appropriate amount of damages. For example, Howell has observed that no particular formula for liquid asphalt cost increases was specified in the written documents. Too, the designated materials indicate that varying methods have been employed by construction estimators to determine per unit costs for bid Item 7. A grant of summary judgment is appropriate only where the moving party is entitled to judgment as a matter of law and there is no genuine issue as to any material fact. <u>Yates</u>, 888 N.E.2d at 846. Moreover, a non-movant must be afforded the

14

opportunity to oppose a grant of summary judgment.  See Crossno, 726 N.E.2d at 381 (observing that Trial Rule 56(C) does not authorize a sua sponte grant of summary judgment and concluding that, where summary judgment was requested on one claim and the trial court granted it for all, the non-movants were entitled to the opportunity to present opposing materials).

Here, although the parties discussed damages in the context of their arguments on liability, their respective summary judgment motions were addressed to liability and they expressly stipulated that the issue of damages was reserved.  The trial court erred in granting summary judgment on damages.

## Conclusion

Calumet established its entitlement to judgment as a matter of law on its claims for extra work, price escalation, and a significant change in the scope of its work.  Howell's failure to pay constituted default and Calumet is entitled to payment under the Fidelity bond. However, summary judgment was improvidently granted on the issue of damages.

Affirmed in part, reversed in part, and remanded.

MAY, J., and BRADFORD, J., concur.