Joseph **CORRIGAN,** Appellant–Defendant,

v.

**AL–TRIM CORPORATION,**
Appellee–Plaintiff.

No. 67A01–9805–CV–165.

Court of Appeals of Indiana.

Oct. 8, 1998.

Rehearing Denied Nov. 23, 1998.

Gail E. Bradley, Jr., Greencastle, for Appellant–Defendant.

Stephen M. Gentry, Indianapolis, for Appellee–Plaintiff.

## OPINION

BAKER, Judge.

Appellant-defendant Joseph Corrigan appeals a judgment entered in favor of appellee-plaintiff Al–Trim Corporation (Al–Trim) in the amount of $74,215.65 following a bench trial claiming that he was entitled to a trial by jury, that several of the trial court's findings were not supported by the evidence and that the trial court erred in awarding Al–Trim an amount for prejudgment interest.

### *FACTS*

In January of 1995, John Loudermilk, the president and sole stockholder of Al–Trim Corporation (Al–Trim) met with Corrigan where he expressed an interest in purchasing a paint machine. Thereafter, Corrigan displayed a disassembled robot painting system which was owned by H.A. Parts, Products Of Indiana Company (Happico). During the meeting, Corrigan explained that Happico was storing the machine at his warehouse.

Corrigan then offered to approach Happico on Al–Trim's behalf to determine whether it would sell the paint machine. Loudermilk agreed, as Corrigan was familiar with the Happico representatives.

Thereafter, Corrigan met with Terry Puffer, the production manager of Happico. On prior occasions, Puffer had acted as Happico's representative in several business dealings it had with Corrigan. Corrigan told Puffer that he might have a buyer for the paint machine. Puffer agreed to sell it and told Corrigan that the price was $100,000. Following this meeting, Corrigan reported to Loudermilk that Happico offered to sell the machine for $200,000. However, Corrigan later told Loudermilk that the price was only $160,000, plus $10,000 for set-up assistance. Corrigan also explained that Loudermilk would have to act quickly as other potential buyers were interested in the machine. Al–Trim ultimately agreed to pay $160,000 for the machine and on January 20, 1995, Loudermilk gave Corrigan a cashier's check in the amount of $170,000 payable to Happico. Corrigan then delivered the check to Puffer. On that same day, Happico issued Corrigan a check in the amount of $60,000. Corrigan told Puffer that the reason the check was made out in the amount of $170,000 instead of $110,000 was because the buyer had purchased additional equipment from him and did not want to write two checks. Corrigan allegedly did not communicate to Puffer that the $60,000 represented a commission or a profit to him or that he was the actual purchaser and was reselling it. When Corrigan received the $60,000 check, he endorsed it and deposited it in the account of one of his companies. Sometime after the paint machine was delivered, Loudermilk learned that the actual selling price was only $100,000.

On December 14, 1995, Al–Trim filed a complaint against Corrigan and Happico which it subsequently amended on June 18, 1997. For its cause of action, Al–Trim sought to recover damages for Corrigan's fraudulent misrepresentations regarding the selling price of the machine. Additional counts set forth in the complaint alleged that the paint machine was defective and Al–Trim sought damages for breach of contract, breach of warranty and repair costs totaling nearly $87,000. Happico answered Al–Trim's initial complaint on February 8, 1996, and included a demand for jury trial. Thereafter, on May 29, 1997, the trial court granted summary judgment in favor of Happico. On December 8, 1997, Al–Trim filed a waiver of jury trial, a copy of which was purportedly mailed to Corrigan. On December 16, 1997, the day of trial, Corrigan requested a continuance because his counsel had withdrawn. Corrigan expressed to the trial court that he desired to find local counsel who was familiar with the "jury people." Record at 77. The judge denied the request and the cause was tried by the court with Corrigan proceeding pro se. Following trial, judgment was entered for Al–Trim in the amount of $74,215.65. Corrigan now appeals.

## DISCUSSION AND DECISION

We initially observe that while Corrigan presents several issues for our review, we need address only one as it is dispositive of this appeal. Corrigan contends that it was error to conduct a trial by court in this cause. Specifically, he claims that a timely request for a jury trial was made and Al–Trim's waiver of jury trial was invalid because it was without Corrigan's required consent.

To resolve this issue, we begin our discussion with the relevant trial rules. In accordance with Ind. Trial Rule 38(D), "A demand for trial by jury made as herein provided may not be withdrawn without the consent of the other party or parties." A companion rule, Ind. Trial Rule 39(A) provides that:

Issues upon which a jury trial is so demanded shall be tried by jury, subject to the following exceptions:

(1) If the parties or their attorneys of record, by written stipulation filed with the court or by oral stipulation made in open court and entered in the record, consent to trial by the court sitting without a jury upon any or all issues triable by jury as of right and so demanded, the court shall try those issues without a jury. The stipulation shall be effective only if filed or made in court before evidence is admitted at the trial or at such later time as the court, in its discretion, may allow.

In addition to the requirements set forth above, Corrigan points to *Whisler v. Bank of Henry County*, 554 N.E.2d 17 (Ind.Ct.App. 1990), in support of his position that error resulted when the instant case was tried by the court. In *Whisler*, the bank initiated a cause of action against a son and his wife, as well as his parents who were guarantors on a promissory note. Thereafter, son and wife answered the complaint and made a timely jury demand. The parents did not file an answer and the case was tried to the court. The guarantor-parents appealed, claiming that the trial court erred in failing to try the case to a jury. *Id.* at 18. This court agreed and determined that because a timely jury demand was filed and the record was silent as to any stipulation or agreement altering that demand, the trial court was obligated to try the case to a jury and the failure to do so constituted reversible error. *Id.* at 19. Moreover, we determined that no action or objection was necessary to preserve error predicated upon the failure to conduct a jury trial after a timely demand has been made. *Id. See also Howell v. State Farm Fire and Cas. Co.*, 530 N.E.2d 318, 321 (Ind.Ct.App. 1988) (once jury demand has been filed, it cannot be waived unless there is strict compliance with T.R. 38 and/or 39); T.R. 39(C).

As set forth in the *FACTS*, the record reflects that Happico filed an Answer to Al–Trim's complaint on February 8, 1996, which included a timely request for jury trial. Thereafter, on May 29, 1997, the trial court granted a motion for summary judgment for Happico and it was subsequently dismissed from this cause of action. It was not until December 8, 1997, that Al–Trim filed a waiver of jury trial which was purportedly mailed to Corrigan. Even assuming that Corrigan received Al–Trim's waiver of jury trial, there is no showing that Corrigan consented to a trial by court in accordance with T.R. 38 and 39. As a result, it was error for the trial court not to conduct a jury trial in this case. *See id; see also Whisler*, 554 N.E.2d at 21.

██ Al–Trim argues, however, that Corrigan waived the right to a trial by jury because he permitted the bench trial to proceed without objection. In *Hamlin v. Sourwine*, 666 N.E.2d 404, 409 (Ind.Ct.App.1996),

this court determined that such a waiver requires a clear failure to object on the record to proceeding without a jury. Moreover, waiver is an intentional relinquishment of a known right involving both knowledge of the existence of the right and the intention to relinquish it. *van de Leuv v. Methodist Hosp. of Indiana*, 642 N.E.2d 531, 533 (Ind.Ct.App. 1994).

Here, Corrigan explained to the trial judge before the trial commenced on December 16, that the successor counsel who anticipated representing him in this matter did not communicate to Corrigan until November 30, 1997, that he was "over-burdened" and could not prepare for trial. R. at 77. Corrigan then requested a continuance and expressed a desire to find a local attorney who would be more familiar with the "jury people." R. at 77. Additionally, in the course of Corrigan's pro se representation and attempted cross-examine of Loudermilk at trial, he was confronted by an objection from Al–Trim's counsel. After the court addressed Corrigan, he responded that he "didn't want to do this." R. at 97. Thus, Corrigan did not display any intention by his actions or words to indicate that he desired to relinquish his right to a jury trial. Moreover, there is no showing that Corrigan merely was attempting to benefit "from a purely procedural error." *Schiller v. Knigge*, 575 N.E.2d 704, 707 (Ind.Ct. App.1991). As a result, we are constrained to conclude that Corrigan did not waive his right to have this cause tried by a jury. *See Hamlin*, 666 N.E.2d at 409; *but see Schiller*, 575 N.E.2d at 707 (no error with respect to trial by court where appellants unequivocally indicated to trial judge that they opted to proceed without a jury).

██ Finally, we are mindful that error in the denial of a jury trial may be harmless. *Builders Square v. Haines*, 696 N.E.2d 453, 455 (Ind.Ct.App.1998). The test for deciding whether the failure to conduct a jury trial constituted harmless error is to determine whether the trial court would have been required to enter a directed verdict had a jury trial been held, or whether a jury verdict in favor of the losing party could have been sustainable. *Whisler*, 554 N.E.2d at 19. In making this determination, we review the

evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the party asserting the right to a jury trial. *Builders Square*, 696 N.E.2d at 456.

Here, the trier of fact was required to determine whether Corrigan's alleged self-dealing amounted to fraudulent conduct. At trial, Corrigan testified that he never personally received the $60,000 "profit" generated on the paint machine. R. at 113. Rather, one of his companies received the money. R. at 113. Moreover, Corrigan claimed that Loudermilk knew that a profit was going to be made from the sale. R. at 113. Although Corrigan's testimony is not particularly convincing, a reasonable person might evaluate his credibility differently than the trial court did and find his conduct did not amount to fraud. Inasmuch as the record contains conflicting evidence presented at trial with respect to the allegations that Al–Trim asserted in its complaint, a verdict which differed from the judgment entered by the trial court in this case could have been sustainable on the record. Therefore, we cannot conclude that the court's failure to try this case by a jury was harmless error. As a result, we remand with instructions that the court set this matter for a trial by jury.

Judgment reversed and remanded.

DARDEN and BAILEY, JJ., concur.