**FORTY–ONE ASSOCIATES, LLC, Appellant–Defendant/Counter Claimant,**

v.

**BLUEFIELD ASSOCIATES, L.P., Appellee–Plaintiff/Counter Defendant.**

**Forty–One Associates, LLC, Appellant–Third Party Plaintiff,**

v.

**Buster Bluefield Associates, L.P. and Buster, Inc., Appellees–Third Party Defendants.**

No. 02A05–0309–CV–441.

Court of Appeals of Indiana.

June 1, 2004.

Stephen L. Fink, Matthew M. Hohman, Barnes & Thornburg, Fort Wayne, IN, Attorneys for Appellant.

Robert S. Schein, Mark R. Wenzel, Max W. Hittle, Jr., Krieg DeVault LLP, Indianapolis, IN, Attorneys for Appellees.

**OPINION**

BAKER, Judge.

Appellant-defendant[1] Forty–One Associates (Forty–One) appeals the trial court's denial of its motion for summary judgment and entry of summary judgment in favor of appellees-plaintiffs Bluefield Associates, L.P., Buster Bluefield Associates, L.P. and Buster, Inc. (collectively "Bluefield.")[2] Specifically, Forty–One argues that the trial court erred in finding that the holder of an estate for years interest in real estate is not responsible for making payments on a mortgage after its estate for years terminated and in finding that Forty–One waived its right to pursue its breach of contract and waste claims against Bluefield by accepting the assignment of Bluefield's right to enforce a lease provision against Bluefield's tenant, K–Mart. Finding that the trial court properly ruled that Forty–One was responsible for the mortgage payments and that Bluefield was released from liability by the Agreement and the K–Mart lease, we affirm.[3]

*FACTS*

On January 31, 1984, Bluefield became the owner in fee simple of 30.864 acres of real estate in Fort Wayne that has improvements totaling 776,008 square feet. At the time that Bluefield purchased the Property, it was subject to the K–Mart lease, the initial term of which was set to expire on November 13, 2003. The Property was also subject to a non-recourse in rem mortgage in favor of New York Life Insurance Company. The debt secured by the mortgage was $1,115,574.00 as of January 22, 2002. Prior to this date, K–Mart made its lease payments directly to New York Life to satisfy the amounts due under the mortgage. Under the terms of the K–Mart lease and the mortgage, the parties contemplated that the payment obligations under the mortgage would be fully satisfied by November 2003, when the initial term of the K–Mart lease expired.

---

1. We refer to Forty–One only as appellant-defendant here for the sake of clarity. As will be explained throughout our discussion, Forty–One also is a counter-claimant and third party plaintiff in this litigation.

2. Buster Bluefield Associates, L.P. is the general partner of Bluefield Associates, L.P., and Buster, Inc. is the general partner of Buster Bluefield, Associates, L.P. Bluefield Associ-

ates, L.P. is also a counter-defendant in this litigation, and the other two entities are also third-party defendants.

3. Oral argument was held in our courtroom in Indianapolis on May 10, 2003. We thank counsel for their able presentations, which assisted us in the determination of this case.

The K–Mart lease also required K–Mart to make all necessary and appropriate repairs to the property at its sole expense when the failure to repair or maintain the property would materially impair the economic value or the usefulness of the property. Bluefield, as the lessor, had the right to enforce this provision of the lease.

On November 7, 1990, Bluefield granted to itself an estate for years interest in the property up to and including November 13, 2003, and further granted an undivided one-half remainder interest in the property to Susan Sandelman as trustee of Fundamental Companies Trust and an undivided one-half remainder interest in the property to Susan Sandelman as trustee for the Nathan Jeffrey Trust (collectively "the Trusts"). The termination date of the estate of years was the same date as the initial termination date of the K–Mart lease.

The rights and obligations of Bluefield as owner of the estate for years and of the Trusts as owner of the remainder interests, were acknowledged and reiterated in a Two Party Agreement dated October 24, 1990. Paragraph five of the two party agreement provides:

> in the event of any default under the K–Mart Lease and/or under the [mortgage] occurs anytime after the date hereof to and including November 13, 2003, the last day of the Estate for Years, ... if such default is not cured by [Bluefield] on or before the fourth (4th) day prior to the expiration of such applicable cure, the Estate for Years shall terminate immediately as of the fourth (4th) day prior to the expiration of applicable cure. For such default under the K–Mart Lease and/or under the [mortgage], notwithstanding the previous agreement of [Bluefield] and Remainderman that the Estate for Years would terminate on November 13, 2003 ... the provisions of this paragraph 5 shall be self-operative and the Estate for Years shall terminate immediately as of the fourth (4th) day prior to the expiration of the applicable cure period for such default under the K–Mart Lease and/or under the [mortgage].

Appellant's App. p. 194. Paragraph six also provided that Bluefield had no power to "amend, modify, alter, change, cancel, terminate or in any manner seek to change the terms, covenants, conditions or provisions of either the K–Mart Lease and/or the [mortgage]." Appellant's App. p. 195. Moreover, paragraph seven allowed Bluefield to refinance the mortgage, provided that the term of the new mortgage ended no later than the termination date of the original mortgage. Appellant's App. p. 195.

By deed dated October 9, 1998, the Trusts sold to Forty–One the remainder interests in the property as well as their rights and obligations under the Two Party Agreement. On several occasions throughout the year 2000, Forty–One asked that Bluefield enforce the repair provision of the lease by requiring K–Mart to make repairs to the roof. Bluefield acknowledged that K–Mart was in default, asking K–Mart to "address their maintenance responsibility under the Lease," Appellant's App. p. 209–10, but did not file a lawsuit to enforce the maintenance provisions of the K–Mart lease. On January 10, 2002, Bluefield assigned to Forty–One the right to sue K–Mart under the K–Mart lease. In a January 15, 2002 letter discussing the Assignment, Forty–One stated, "Accordingly, Bluefield is assigning its rights to enforce the maintenance provisions of the Lease to Forty–One Associates. This Assignment is in lieu of Forty–One Associates naming Bluefield as a party to the lawsuit." Appellant's App. p. 229.

On January 22, 2002, K–Mart filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 et seq. As part of the bankruptcy proceedings, K–Mart subsequently repudiated the K–Mart Lease and, consequently, stopped making payments under the mortgage. Bluefield, thereafter, failed to make any payments due under the mortgage, and New York Life declared a default. Forty–One cured the default under the mortgage to avoid foreclosure of the property.

On June 7, 2002, Bluefield filed a complaint for declaratory judgment seeking a determination of its right, title, and interest in and to the property. In particular, Bluefield requested that the trial court declare that it had no right, title, interest or estate in, and thus bore no responsibility for, the property. Forty–One responded with a counterclaim against Bluefield, alleging that Bluefield had committed waste by purportedly failing to undertake repairs to the property and that Bluefield had breached a two-party agreement between Forty–One and Bluefield by waiving K–Mart's defaults under the K–Mart lease. Forty–One also sought an order declaring that Bluefield is obligated to make payment due on the mortgage and is not entitled to receive any rent payments from the property. Forty–One also filed a third-party complaint against Buster Bluefield Associates, L.P. and Buster, Inc. to answer as to any interests they had in the subject of the action.

On January 10, 2003, Forty–One and Bluefield filed cross-motions for summary judgment. Forty–One sought partial summary judgment on its breach of contract and declaratory judgment claims. Bluefield requested summary judgment seeking a determination that Forty–One became the fee simple owner of the property as of January 22, 2002, the date K–Mart filed for bankruptcy, making Forty–One solely responsible for paying all amounts remaining due on the mortgage and that Bluefield no longer had any interest in, or responsibility for, the property. Bluefield further moved for summary judgment on Forty–One's waste and breach of contract claims, on the grounds that those claims were waived by the terms of the January 10, 2002 Assignment.

On August 5, 2003, the trial court entered findings of fact and conclusions of law granting summary judgment in favor of Bluefield and against Forty–One as to all claims. Specifically, the trial court found that Bluefield's Estate for Years terminated as of January 22, 2002, that Bluefield no longer had any interest in, or responsibility for, the property pursuant to the terms of the two-party agreement, that Forty–One became the fee simple owner of the property as of January 22, 2002, and that Forty–One was thereafter responsible for possession, control and maintenance of the property and payments of the mortgage. The trial court further concluded that the mortgage was an in rem mortgage, and, therefore, Bluefield had no personal liability under the mortgage and the Forty–One waived any rights to assert claims for breach of contract or waste against Bluefield by entering in the Assignment. Forty–One now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

When reviewing the grant or denial of a motion for summary judgment, we use the same standard as the trial court. *Bastin v. First Indiana Bank,* 694 N.E.2d 740, 743 (Ind.Ct.App.1998), *trans. denied.* Summary judgment is appropriate only if the designated evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Hemingway*

*v. Sandoe,* 676 N.E.2d 368, 369 (Ind.Ct. App.1997). We will construe the designated evidence liberally in the light most favorable to the non-moving party. *Id.* We will affirm summary judgment if it is sustainable on any theory or basis found in the evidentiary matter designated to the trial court. *Inlow v. Inlow,* 797 N.E.2d 810, 818 (Ind.Ct.App.2003).

 Construction of written contracts is generally a question of law for which summary judgment is particularly appropriate. *Noble Roman's, Inc. v. Ward,* 760 N.E.2d 1132, 1137 (Ind.Ct.App.2002). When the terms of a contract are clear and unambiguous, those terms are conclusive, and the court will not construe the contract or look at extrinsic evidence but rather will simply apply the contract provisions. *Stout v. Kokomo Manor Apartments,* 677 N.E.2d 1060, 1064 (Ind.Ct.App. 1997). When interpreting a contract, a court must ascertain and effectuate the intent of the parties. *Samar, Inc. v. Hofferth,* 726 N.E.2d 1286, 1290 (Ind.Ct.App. 2000), *trans. denied.* The contract must be read as a whole and the language construed so as not to render any words, phrases, or terms ineffective or meaningless. *Id.*

## II. Payment of the Mortgage

 Forty–One first argues that the trial court erred by relieving Bluefield of its obligation to pay amounts remaining due on the mortgage. Specifically, Forty–One contends that the parties intended for Bluefield to pay the entire mortgage, that the two-party agreement reflected that intent, and that the fact that the mortgage is non-recourse is irrelevant to Bluefield's obligation to pay the mortgage.

 It is axiomatic that the mortgagor, Bluefield in this case, is responsible to the mortgagee for making the mortgage payments. However, part of the trial court's rationale for finding that Forty–One was responsible for payment of the mortgage was that the mortgage was a non-recourse in rem mortgage. This means that the mortgagor has no personal liability for the indebtedness secured by the subject property. *See Huntingburg Prod. Credit Ass'n v. Griese,* 456 N.E.2d 448, 452 (Ind.Ct.App.1983) (stating that a mortgage may secure the debt of another without the mortgagor assuming personal responsibility for the debt). Moreover, the owner of a property must assume the risk of loss. *Humphries v. Ables,* 789 N.E.2d 1025, 1035 (Ind.Ct.App.2003) (citing *Ridenour v. France,* 442 N.E.2d 716, 717 (Ind. Ct.App.1983) (upon consummation of real estate contract, purchasers become equitable owners and, absent contrary agreement, must assume risk of loss)).

Forty–One argues that paragraphs five, six and seven of the Agreement demonstrate that the parties originally intended for the mortgage to be paid off before Forty–One took ownership of the property. Bluefield conceded at oral argument that the original intent was to pay the mortgage before the end of their Estate for Years, but that the Agreement contemplated different possibilities of early termination. This is indeed the case. Paragraph five of the Agreement calls for the immediate termination of the Estate for Years in the event of a default of the K– Mart lease. K–Mart did in fact default on the lease when it declared bankruptcy, and Forty–One became the fee simple owner of the property as of January 22, 2002.

For all the sophistication of this real estate transaction, neither party thought to spell out in the Agreement that it was their intent that either Forty–One or Bluefield pay the entirety of the mortgage in the event of a default. Moreover, our review of the Agreement reveals nothing in paragraphs five, six, and seven that

indicates that either party should pay in that instance. Thus, we return to our basic principle: the owner of the property must bear the risk of loss. *Humphries,* 789 N.E.2d at 1035. Inasmuch as Forty–One was the owner of the property immediately after the default occurred, it must bear the risk of loss. Therefore, the trial court did not err in finding that Bluefield was not responsible for paying the remainder of the mortgage.

### III. Waiver

■ Forty–One next alleges that the trial court erred in finding that "by entering into the Assignment, Forty–One waived any of its rights to argue that Bluefield is liable to Forty–One for breaching paragraph six of the Two Party Agreement or that Bluefield is liable for committing waste on the Property." Appellant's App. p. 30. Specifically, Forty–One contends that the Assignment is silent as to any claims held by Forty–One against Bluefield and only allows Forty–One to enforce the terms of the K–Mart lease.

■ Waiver is "the intentional relinquishment of a known right involving both knowledge of the existence of the right and the intention to relinquish it." *Corrigan v. Al–Trim Corp.,* 700 N.E.2d 481, 484 (Ind.Ct.App.1998), *trans. denied.* Waiver is an affirmative act, and mere silence, acquiescence or inactivity does not constitute waiver unless there was a duty to speak or act. *Rogier v. Am. Testing and Eng'g Corp.,* 734 N.E.2d 606, 620 (Ind. Ct.App.2000), *trans. denied.* The existence of facts necessary to constitute waiver is ordinarily a question of fact, while the question of what facts are necessary to constitute waiver is a matter of law. *Jackson v. DeFabis,* 553 N.E.2d 1212, 1217 (Ind.Ct.App.1990). Additionally, a remainderman may maintain an action for waste, trespass, or injury to the inheritance not-

withstanding an intervening estate for years. Ind.Code § 32–30–4–2.

■ We agree with Forty–One that the Assignment does not act as a waiver of all future claims. To be sure, it does no more than allow Forty–One to "enforce the maintenance provisions of the Lease including ... declaring a default under the Lease and commencing litigation against K–Mart to recover any damages suffered or sustained by Bluefield and Forty–One Associates as the result of the failure of K–Mart to perform its maintenance obligations under the Lease." Appellant's App. p. 226–27. However, the terms of the lease and the Agreement lead us to conclude that the risk of loss must fall on Forty–One.

The K–Mart lease requires K–Mart to make repairs "where the failure to undertake such repairs or maintenance would materially impair the economic value or the usefulness of the Lease Property or any part thereof." Appellant's App. p. 163–64. The condition of the roof had reached the point where failure to make the repairs would materially impair the economic value of the property. Appellant's Br. p. 6. Section 19.1 of the lease stated that an event of default occurred if "Lessee shall fail to observe or perform any other term, covenant or condition of this Lease and such failure shall continue for a period of 30 days after notice thereof...." Appellant's App. p. 175. Discussion between Forty–One, Bluefield, and K–Mart regarding repair of the roof was ongoing from at least April 2000 through November 15, 2001. Appellant's App. p. 208–15. Thus, K–Mart failed to perform the maintenance and repair term of the lease for more than a period of thirty days. Therefore, K–Mart was in default of the lease, and Forty–One was the fee simple owner of the property by the express language of paragraph five of the Agreement,

"In the event of any default under the K–Mart Lease ... the Estate for Years shall terminate immediately as of the fourth (4th) day prior to the expiration of the applicable cure period for such default under the K–Mart Lease...." Appellant's App. p. 194. Inasmuch as the owner of the property must assume the risk of all loss, *Humphries,* 789 N.E.2d at 1035, Forty–One no longer had any claim against Bluefield. Thus, we reach the same result as the trial court but for different reasons. The Assignment did not act as a release, but the lease in combination with paragraph five of the Agreement did.

### CONCLUSION

We find that the trial court did not err in finding that Forty–One, as the fee simple owner of the property, bears the risk of loss as to payment of the mortgage. Additionally, we find that the Assignment did not release Bluefield from liability but that the Agreement and the K–Mart lease did.

The judgment of the trial court is affirmed.

FRIEDLANDER, J., and BAILEY, J., concur.