**ALLSTATE INSURANCE COMPANY, Appellant–Defendant,**

v.

**John BURNS, Tim and Vickie Burns, as Parents of John Burns, Appellees– Plaintiffs, and**

**Josh Rogers and American Family Insurance Company, Appellees– Defendants.**

No. 88A01–0502–CV–58.

Court of Appeals of Indiana.

Nov. 29, 2005.

---

Mark R. Smith, Smith Fisher Maas & Howard, Indianapolis, for Appellant.

David P. Allen, Allen, Allen & Allen, Salem, for Appellees John Burns, Tim and Vickie Burns.

Shawn M. Nolen, Collignon & Dietrick, P.C., Indianapolis, for Appellee Josh Rogers.

Eric D. Johnson, J. Todd Spurgeon, Kightlinger & Gray, LLP, Indianapolis, for Appellee American Family Insurance Co.

## OPINION

BAKER, Judge.

Appellant-defendant Allstate Insurance Company (Allstate) appeals the trial court's order denying its motion for summary judgment and in entering judgment in favor of appellee-defendant, Josh Rogers. Additional parties in this action include the appellees-plaintiffs John, Tim and Vickie Burns (collectively, the Burnses), and appellee-defendant, American Family Insurance Company (American Family), the company that had issued a motor vehicle policy to the Burnses that included an uninsured motorist provision. The trial court determined as a matter of law that Allstate was obligated to defend and indemnify Josh against a claim for damages that the Burnses lodged against him as a result of injuries that John sustained in an accident involving a carburetor that had ignited when he and Josh were attempting to "prime" Josh's parked vehicle. Allstate further contends that the trial court erroneously determined that it was obligated to pay damages to John under the Guest Medical Provision of the homeowner's insurance policy that had been issued to Josh's parents.

Concluding that the trial court properly determined that Allstate had a duty to defend and indemnify Josh, and further finding that it had a duty under the homeowner's policy to provide medical coverage in connection with the accident, we affirm the judgment of the trial court.

### FACTS

Josh resided with his mother and stepfather, Betty and David Rogers (the Rogerses) at their home in Pekin. The Rogerses were the named insureds under Allstate's Deluxe Mobilehome Policy, with the effective dates of coverage beginning on July 6, 2001, and ending on July 6, 2002.

In February 2002, Josh purchased a 1978 Chevy Sierra pickup truck from "Trade–In Charlie's" in Pekin. Appellant's App. p. 75–76. Josh was issued a temporary plate for the truck, and he subsequently purchased automobile insurance coverage on the vehicle. Shortly after

Josh had purchased the truck, the electric choke stopped working. However, the truck was not inoperable, and Josh continued to drive it as his means of transportation. However, in early March 2002, the truck's transmission failed, and the vehicle would no longer run. A couple of days later, Josh cancelled his insurance coverage, and he declared the truck to be a "lemon." Appellant's App. p. 215. Instead of taking the vehicle to a garage, Josh decided that he would repair the vehicle himself with the assistance of John Burns, his friend.

The vehicle was parked behind the Rogerses' residence and Josh subsequently purchased a new transmission and some other items for the truck at a salvage yard. Josh, along with John's assistance, intended to install a replacement acceleration pump and truck transmission. In order to make the repairs, Josh decided to move the truck from its current location to a barn that was also on the Rogerses' property. To maintain control of the truck while it traveled downhill to the barn, Josh had to start the truck so that he would have the use of the power steering and brakes.

On April 5, 2002, Josh opened the hood of the truck and poured some gasoline into the carburetor in an effort to prime it. When the vehicle did not start, John poured more gasoline on the carburetor. When Josh attempted to start the engine, the gasoline fumes ignited, burning John. As a result of this accident, John suffered serious permanent physical injuries. At the time of the incident, an uninsured motorist policy issued by American Family to the Burnses was in effect.

The Burnses filed a complaint against Josh, American Family and Allstate, seeking damages for John's injuries. The count against American Family alleged that the uninsured motorist provision of the policy permitted them to recover damages against Josh because his injuries arose "out of the use of an uninsured motor vehicle." Appellant's App. p. 7. The action against Allstate sought a declaratory judgment regarding the applicability of the Rogerses' homeowner's insurance policy. Allstate had initially denied coverage under the policy, claiming that the injuries were from a motor vehicle that excluded coverage. On the other hand, the Burnses alleged that Josh's truck fell within the exception to a motor vehicle exclusion set forth in the policy. Thus, the Burnses requested the trial court to determine the parties' rights and obligations under the policy upon the allegation that the vehicle had been placed in "dead storage."

The Family Liability Protection (FLP) portion of the policy that Allstate issued to the Rogerses included the following provisions:

*Losses We Cover*

> We will pay all sums arising from the same loss which an insured person becomes legally obligated to pay as damages because of bodily injury or property damage covered by this part of the policy.

> We may investigate or settle any claim or suit for covered damages against an insured person. If an insured person is sued for these damages, we will provide a defense with counsel of our choice, even if the allegations are not true. We are not obligated to pay any claim or judgment or defend any suit after we have exhausted the limit of our liability.

Appellant's App. p. 50. The policy defines the term "insured person" to include Josh—a resident relative under the care of the Rogerses. The FLP portion of the policy also contains a motor vehicle exclusion that reads:

*Exclusions—Losses We Do Not Cover*

. . . . .

5) We do not cover bodily injury or property damage arising out of the ownership, operation, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motorized land vehicle or trailer.

This exclusion does not apply to:

a) *a motorized land vehicle in dead storage or used exclusively on the residence premises.*

Appellant's App. p. 50 (emphasis added). The policy defines "residence premises" as the "mobile home, separate structures, and owned or rented grounds, where you reside as shown on the declarations page." *Id.* at 36. The policy does not specifically define "dead storage" or "maintenance" of a vehicle.

There is also a section entitled "Guest Medical Protection Coverage" in the policy with stated limits of liability of $1,000 per person. This portion of the agreement reads as follows:

We will pay the reasonable expenses incurred for necessary medical, surgical, x-ray and dental services, prosthetic devices, eyeglasses, hearing aids and pharmaceuticals, and ambulance, hospital, licensed nursing, and funeral services. These expenses must be incurred and services rendered within three years from the date of an accident causing bodily injury covered by this part of the policy.

Each person who sustains bodily injury is entitled to this protection when that person is: .

1. On the insured premises with the permission of an insured person.

*Id.* at 52. This coverage includes a motor vehicle exclusion and exception to that exclusion identical to the FLP portion of the policy quoted above.

In light of these provisions, Allstate filed a motion for summary judgment on May 17, 2004, alleging that the complaint against Josh was subject to the motor vehicle exclusion portions of the policy set forth above. Therefore, Allstate contended that it was entitled to summary judgment as a matter of law because it was not liable under the policy in light of these exclusions.

In response, American Family asserted that summary judgment is inappropriate for Allstate because the language used in the policy "is ambiguous and subject to different interpretations by different people." Appellant's App. p. 143. American Family also claimed that Allstate had a duty to defend and indemnify Josh against the complaint because the truck was in "dead storage" when the accident occurred and, therefore, the motor vehicle exclusion did not apply. *Id.* at 143. The Burnses responded that Allstate should be required to indemnify Josh for the injuries that John suffered if it can be proved by a preponderance of the evidence that Josh was responsible for those injuries. Additionally, the Burnses alleged that if John could prove that the truck was in "dead storage" within the meaning of the policy terms, or if he could show that the vehicle was used exclusively on the premises of the residence, then the Guest Medical Protection Coverage provision of the policy would impose a duty on Allstate to pay that part of the claim. Similarly, Josh responds that the exclusions under the Allstate policy do not apply in these circumstances because the truck was in "dead storage" or was "used exclusively on the residential premises." Appellee's Br. of Josh Rogers, p. 6. Hence, he claimed that Allstate was liable under the policy.

Following a hearing on the motion for summary judgment, the trial court denied

Allstate's motion and ultimately entered judgment in Josh's favor on January 12, 2005. In arriving at this result, the trial court made specific findings of fact and conclusions of law in its "Order Denying Allstate's Motion for Summary Judgment and Granting Summary Judgment on Interpretation of Policy," reasoning that:

19. The court finds that there are no disputed material issues of fact.

20. The facts are not subject to more than one interpretation and support a finding that the subject truck was in "dead storage" as defined by the Allstate policy.

21. These facts also support a conclusion that the subject truck was exclusively used on the premises as defined by the Allstate policy.

22. The Court further finds that the Allstate policy language which is the subject of the Motion for Summary Judgment i[s] not ambiguous.

23. The interpretation of the Allstate policy is a matter of law and it is appropriate for the court to interpret the policy.

24. The cases cited by Allstate ... reached decisions on policy language most of which is dissimilar to the policy language in the Allstate policy which is the subject of this matter herein.

. . . . .

IT IS THEREFORE ORDERED AS FOLLOWS:

1. Allstate's Motion for Summary Judgment is hereby denied.

2. Under the undisputed facts of this case, Section II Family Liability—art 1–Coverage X—Family Liability Protection provides coverage and Allstate has a duty to defend/indemnify Josh Rogers.

3. Under the undisputed facts of this case, Section II Family Liability—Part 2–Coverage Y—Guest Medical Protection provides coverage to John Burns.

4. Pursuant to Trial Rule 56, the court finds that there is not just reason for delay and hereby directs entry of final judgment as to the interpretation of obligations of Allstate as set out hereinabove.

Appellant's App. p. 216–17. Allstate now appeals this order.

## DISCUSSION AND DECISION

### I. Standard Of Review

■ Before addressing the merits of Allstate's claims, we first note that summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Fort Wayne Lodge, LLC. v. EBH Corp.*, 805 N.E.2d 876, 882 (Ind.Ct.App. 2004). In reviewing a decision upon a summary judgment motion, we apply the same standard as the trial court. *Id.* That is, we do not reweigh the evidence designated by the parties. *Id.*

The party moving for summary judgment has the burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Id.* Once this burden is met, the non-moving party must respond by setting forth specific facts demonstrating a genuine need for trial, and it cannot rest upon the allegations or denials in the pleadings. *Id.* Additionally, Indiana Trial Rule 56(H) provides that "[n]o judgment rendered on the motion shall be reversed on the ground that there is a genuine issue of material fact unless the material fact and the evidence relevant thereto shall have been specifically designated to the trial court." Consequently, we review only the desig-

nated evidentiary material in the record, construing that evidence liberally in favor of the non-moving party, so as not to deny that party its day in court. *Id.*

We also note that when, as here, the trial court has entered specific findings and conclusions with regard to a summary judgment ruling, we are not limited to reviewing the trial court's reasons for granting or denying summary judgment. *Bernstein v. Glavin,* 725 N.E.2d 455, 458 (Ind.Ct.App.2000), *trans. denied.* While such findings and conclusions offer valuable insight into the rationale for the judgment and facilitate our review, a grant of summary judgment may be affirmed upon any theory supported by the designated materials. *Id.*

We further observe that the construction of written contracts is generally a question of law for which summary judgment is particularly appropriate. *Forty–One Assocs., LLC v. Bluefield Assocs., L.P.,* 809 N.E.2d 422, 426 (Ind.Ct.App. 2004). *Id.* When the terms of the contract are clear and unambiguous, those terms are conclusive, and this court will not construe the contract or consider extrinsic evidence. *Id.* Rather, we will simply apply the contract provisions. *Id.* When interpreting a contract, a court must ascertain and effectuate the intent of the parties. *Id.* The contract must be read as a whole and the language construed so as not to render any words, phrases, or terms ineffective or meaningless. *Id.* A contract of insurance is subject to the same rules of interpretation as are other contracts. *Eli Lilly and Co. v. Home Ins. Co.,* 482 N.E.2d 467, 470 (Ind.1985). When insurance policies are interpreted, this court has determined that exceptions, limitations and exclusions under such contracts must be plainly expressed in the policy. *Delaplane v. Francis,* 636 N.E.2d 169, 171 (Ind. Ct.App.1994), *trans. denied.* In the event

that the language of the policy is clear and unambiguous, the courts give to that language its plain and ordinary meaning and enforce the contract according to its terms. However, if the language is ambiguous, then courts construe the insurance policy against the insurer. *Rice v. Meridian Ins. Co.,* 751 N.E.2d 685, 688 (Ind.Ct.App. 2001), *trans. denied.*

## II. Allstate's Contentions

In this case, Allstate claims that the trial court's ruling was erroneous because the motor vehicle exclusions set forth in the policy demonstrate that it has no duty to defend or indemnify Josh in the action. Further, Allstate maintains that it was not under any duty to provide coverage in this instance under the Guest Medical Protection provision of the policy. In essence, Allstate maintains that the trial court erroneously concluded that Josh's truck was in "dead storage" at the time of the accident within the meaning of the policy and that the trial court erred in concluding that the use of gasoline to prime the carburetor did not constitute "maintenance" of the truck under the policy. Appellant's Br. p. 9.

### A. Dead Storage

In resolving these issues, we first note that our courts have not had the occasion to construe the meaning of "dead storage" of a vehicle as this term is used in a contract of insurance such as the one here. By the same token, a number of courts from our sister states have considered various circumstances in order to determine whether this term operates as an exception to the motor vehicle exclusion of an insurance policy.

The first reported case in the United States that we have found to have ascribed a meaning to the term "dead storage" in the context of automobiles was *Hogan v. O'Brien,* 123 Misc. 865, 206 N.Y.S. 831

(1924). In *Hogan*, a landlord rented space in his garage to various vehicle owners and gave them their keys so they could access their vehicles at any time. Some of the vehicles were considered "dead," because they were not being used and the owners decided to place them in storage. On the other hand, the vehicles that were used on a daily basis were described as "live." *Id.* at 832.

Since *Hogan*, at least three states—including Maryland which has construed an Allstate policy identical to the one before us—have found facts to support a conclusion that the particular vehicle involved in an accident was in dead storage.

For instance, in *Allstate Ins. Co. v. Geiwitz*, 86 Md.App. 704, 587 A.2d 1185 (1991), the evidence demonstrated that the vehicle at issue was not used for transportation purposes, was moved from one point to another on the insured property, and was undergoing a gas gauge repair where gasoline that had been drained from the vehicle ignited a kerosene heater. Allstate desired the court to accept its argument that the term "dead storage" meant that a vehicle must be "totally inoperable, incapable of any function whatever;" and that "storage" meant "beyond use . . . in the ordinary course of things." *Id.* at 1187. In rejecting these arguments, the *Geiwitz* court determined that the vehicle was in dead storage not only because it was not driven and not insured under an automobile insurance policy, but also that it was kept as a collectible and not as a means of transportation. *Id.* at 1187. In essence, the court in *Geiwitz* made a distinction between insured vehicles that were driven on public roads and those vehicles that are kept for non-transportation purposes where no automobile insurance policy would be needed. *Id.* at 1189.

Various courts have also considered cases regarding the meaning of "dead stor-age" under a homeowners' policy and have reached the conclusion that the activities of the insured did not preclude the dead storage exception from applying to the motor vehicle exclusion. For instance, in *Sharpe v. State Farm Fire & Cas. Co.*, 558 F.Supp. 10 (E.D.Tenn.1985), the insured kept unregistered and uninsured vehicles on his property. While the owner occasionally drove the vehicles around his yard, the court held that there was sufficient evidence to support a finding that the vehicles were in dead storage within the meaning of the policy. *Id.* at 11.

In *Nationwide Mut. Fire Ins. Co. v. Allen*, 68 N.C.App. 184, 314 S.E.2d 552 (1984), the insured had stored his motorcycle for six months on the patio of his apartment. *Id.* at 554. Mechanical damage that had occurred in its last use rendered the vehicle inoperable. The motorcycle was not registered, it had no license plate, and it was not named or insured under any policy of insurance. At some point, Allen moved the motorcycle inside the apartment on a rainy day to perform a diagnostic inspection to determine the extent of repair that was needed. While Allen was charging the battery, he placed a timing light on the fork of the vehicle. As Allen went to turn off his television, the bike toppled over and caught fire. *Id.* Apparently, Allen had placed some combustible materials, such as plastic and newspaper under it to protect the carpet, and motor oil was kept near it as well. *Id.*

It was ultimately determined that a vehicle being prepared to undergo maintenance at the time of loss could be considered in dead storage within the meaning of the insurance policy because it had been kept in storage when the accident occurred. The North Carolina Court of Appeals also noted that the motorcycle had not been subject to motor vehicle registration requirements. *Id.* at 555. Hence,

insurance coverage was applicable in that circumstance. *Id.*

Notwithstanding the above, Allstate points to several other cases in support of its position that Josh's truck was not in "dead storage" and, therefore, was not exempt from the automobile exclusion under the policy. For instance, in *Broadway v. Great Am. Ins. Co. Inc.*, 465 So.2d 1124 (Ala.1985), a vehicle engine that was eight years old had been rebuilt and had just been hoisted into place. A bystander was burned when a friend of the vehicle's owner attempted to prime the carburetor while the owner attempted to start it. The evidence showed that the insured had pulleys and equipment for working on cars in his garage "where he frequently [did] repair work on his vehicles." *Id.* at 1125. The Alabama Supreme Court determined that the terms "maintenance" and "dead storage" are mutually exclusive terms, such that a vehicle cannot undergo maintenance and be in dead storage at the same time. However, the *Broadway* court dealt with a vehicle that had its own automobile insurance policy. The vehicle was also presumably registered and could be driven on public roads if it was drivable. *Id.*

Allstate also directs us to *Bowen v. Hanover Ins. Co.*, 599 A.2d 1150 (Me. 1991), where the insured's vehicle rolled into the street in the path of an oncoming car, injuring the passengers in the vehicle. *Id.* at 1150. The court ignored the fact that the vehicle was unregistered, disabled, and not in used and instead focused on one particular factor: " 'Dead storage means that the vehicle is placed in some condition where it has no potential to cause harm because of its attributes as a motor vehicle.' " *Id.* at 1151.

■ When considering the applicability of the case cited by the parties to the circumstances at bar, we note that the trial court identified the following factors in determining that Josh's truck was in "dead storage":

1. Two weeks after the purchase, the transmission failed rendering the truck inoperable. The truck also lacked a working electric choke and acceleration pump.

2. Josh did not attempt to start the truck until the day of the accident.

3. Josh did not register the truck and get license plates, but let the temporary tags on it expire.

4. Josh purchased insurance on the truck, but canceled the insurance after it became inoperable and he quit driving it.

5. Neither Josh nor John had any formal training, either from schooling or employment, to work on cars.

6. At the time of the accident, Josh and John were attempting to start the vehicle so the power steering and power brakes could be used while Josh rolled it down a hill into a barn on the property, not to drive the truck under its own power.

7. The barn had no hoist, equipment or anything of that nature in it.

Appellant's App. p. 215–16. In essence, what can be gleaned from these facts is that for two weeks, Josh drove the truck to school and nowhere else. After the vehicle became disabled, Josh took affirmative action to remove the truck from any "active daily use" by canceling his insurance and registration. In essence, Josh's truck continued to remain on the premises, virtually untouched, for nearly two months, it was not used on public roadways, and it was only moved on the Rogerses' property. To be sure, the condition of the truck had substantially changed from the time that Josh had used it for transportation. Simply put, the designated evidence shows that the truck was no longer operable,

licensed, registered, or insured. In light of these factors, we conclude that the trial court properly determined that Josh's truck was in "dead storage" within the meaning of Allstate's policy terms when the accident occurred. As a result, we affirm the trial court's ruling on this basis.

 In a somewhat related issue, Allstate goes on to argue that the exception to the motor vehicle exclusion does not apply in this instance because the trial court erroneously concluded that the truck was not being "maintained" at the time of the accident. That is, Allstate avers that the exception should apply because the designated evidence established that Josh was "maintaining" the truck within the meaning of the policy terms when the accident occurred. Appellant's Br. p. 17.

Inasmuch as we have already determined that the truck was in "dead storage" when the accident occurred—thereby rendering the automobile exclusion inapplicable here—we need not decide whether the policy exclusion relating to the maintenance of a vehicle is applicable. Nonetheless, we note that this court has defined the term "maintenance" as "to preserve or keep in an existing state or condition and embraces acts of repair and other acts to prevent a decline, lapse, or cessation from that state or condition." *Meridian Mut. Ins. Co. v. Purkey*, 769 N.E.2d 1179, 1184 (Ind.Ct.App.2002). As set forth above, the truck was inoperable at the time of the incident because the transmission had failed. The designated evidence shows that Josh and John were not attempting to keep the vehicle in that state of disrepair. Rather, the two were preparing to move the truck so they could install a transmission and render it operable.

We recognized in *Purkey* that the act of siphoning gasoline constituted a preliminary step in maintaining the vehicle. Unlike those circumstances, however, it was not necessary here for Josh and John to start the truck when the incident occurred in order to replace the transmission or repair other items on the truck. Moreover, the designated evidence did not establish that it was necessary to move the truck in order to replace the vehicle's transmission. While Josh and John may have desired to perform the installation in the barn, and wanted to make moving the truck easier, we cannot say that the act of starting the vehicle was part of the "series of steps" that related to the diagnosis, repair, or maintenance of the truck. Hence, contrary to Allstate's arguments, the designated evidence did not establish that the truck was undergoing any "maintenance" within the meaning of the policy when the incident occurred. Thus, the automobile exclusion provision of the policy did not apply in these circumstances, and Allstate's argument fails on this basis as well.

### B. Exclusive Use on the Premises

 In addition to Allstate's argument that the truck was not in dead storage under the exception to the automobile exclusion portion of the policy, it goes on to claim entitlement to summary judgment because the designated evidence failed to establish that the truck was "used exclusively on the residence premises" within the meaning of the policy. In essence, Allstate contends that this exception to the automobile exclusion should apply "if, and only if, the truck was used only on the residence premises throughout the duration of the policy period of Allstate's Policy." Appellant's Br. p. 27.

First, we agree with the proposition set forth in *Geiwitz* that the purpose of the "exclusive use" language in insurance policies is to disallow coverage specifically for vehicles that are used for transportation on public roads. 587 A.2d at 1189. More

specifically, the court in *Geiwitz* observed that

> Vehicles used for transportation on public roads necessarily would have to be insured under an automobile insurance policy. The automobile policy, then, would cover any bodily injury or property damage that arose from vehicle-related incidents. Because Geiwitz did not use the car for transportation purposes, there was no reason for him to purchase an automobile insurance policy. We think that under these circumstances, he reasonably could have believed that the homeowner's policy would cover any bodily injury or property damage from a vehicle that was kept as a collectable item rather than a means of transportation.

*Id.*

While there is certainly no evidence that Josh's truck was a "collectible," the vehicle was not registered, there was no automobile insurance coverage on it, and the truck was inoperable at the time of the incident. Appellant's App. p. 85. Moreover, even though the truck was used to travel on the public roads at some point and may have become roadworthy in the future, it had remained on the Rogerses' property for nearly two months. And the truck could not be legally driven from those premises when the accident occurred.

In our view, it is most telling that the Allstate policy does not define or limit the time period as to when the vehicle must be used exclusively on the residence premises. Just as a vehicle's status in dead storage can fluctuate over the course of a policy period, so can its status of particular use. Even so, Allstate directs us to *George v. Farmers Ins. Co. of Wash.*, 106 Wash.App. 430, 23 P.3d 552 (2001), for the proposition that before any vehicle may fall under the policy's automobile exclusion provision, the vehicle must be used only on the residence premises during the entire course of the policy period. Contrary to what Allstate claims, however, the real issue in *George* was whether a recreational vehicle that had been driven on public roads prior to the policy period would fall within the exclusions even though it was not used off the residence premises during the policy period. *Id.* at 558.

In *George*, an insured couple had purchased liability insurance coverage for injuries that might result to a guest on the premises. At the time of the accident, another individual was assisting George work on his motor home. *Id.* at 555. The motor home had been off the premises only three times since George had purchased it: once to move it onto the property, and twice to move it off the premises because of area flooding. *Id.* at 556. However, from the time that the policy went into effect until the date of the injury, the motor home had not been moved from the property. *Id.*

The terms of the insurance policy in *George* defined a "motor vehicle" as one that was designed to travel on public roads. By the same token, the definition excluded a "motorized land vehicle used only on an insured location and not subject to motor vehicle registration." *Id.* at 557. The *George* court observed that the use of the vehicle during the policy period was relevant, but any pre-policy period use was not. *Id.* The court also determined that an "insured location" did not exist apart from the limits of the policy period. Even though the insurance company argued that its policy should exclude coverage because the motor home had previously been moved from the premises once the insured had acquired it, the court determined that before the policy went into effect, there was no insured location and, therefore, the previous acts of the insured did not factor

into the analysis of what amounted to the insured location. Specifically, the court concluded that "both phrases contained in the definition of what is not a motor vehicle refer to the period of coverage and not to any earlier time." *Id.* As a result, it was determined that the insured was entitled to judgment because the term "insured location" in the policy had no meaning apart from the duration of the policy term even if the vehicle had been used off of the lands of the homeowner before the policy went into effect.

In this case, we find that Allstate's efforts to compare its policy with the one in *George* unpersuasive for three reasons: (1) the use of the term "insured location" in the *George* policy was much more time-specific than Allstate's use of the term "residence premises"; (2) while Allstate's policy makes no distinction about types of vehicles allowed to be "used exclusively on the residence premises," the policy in *George* excluded some types of vehicles from the definition of a "motor vehicle"; and (3) the insurance policy in *George* included the limitation "not subject to motor vehicle registration," while Allstate's policy included no such language, thereby rendering the *George* policy more restrictive. To be sure, the "residence premises" here existed before the policy went into effect,

existed during the accident, and existed after the expiration of the policy. Hence, Allstate's contention on this basis likewise fails, and the trial court did not err in denying its motion for summary judgment.

### CONCLUSION

In light of the foregoing, we conclude that the trial court properly denied Allstate's motion for summary judgment because the designated evidence demonstrated that Josh's truck was in dead storage within the meaning of the policy and that the vehicle was exclusively used on the premises. Hence, the trial court correctly entered judgment for Josh because Allstate has a duty to defend and indemnify him and because the Guest Medical Protection Provision of the Policy provides coverage to John.

The judgment of the trial court is affirmed.

FRIEDLANDER, J., and VAIDIK, J., concur.